**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

INDUSTRY ICON CLEANING
AND RESTORATION, INC.                         CIVIL ACTION


VERSUS                                                     NO. 23-3056


FAIRWAY VILLAGE
CONDOMINIUMS, INC.                          SECTION: "H"


## ORDER AND REASONS

Before the Court is Defendant Fairway Village Condominiums, Inc.'s Motion for Summary Judgment (Doc. 47). For the following reasons, Defendant's Motion for Summary Judgment is **DENIED.**


## BACKGROUND

This diversity case arises out of the breach of an alleged contract between Plaintiff Industry Icon Cleaning and Restoration ("Industry Icon") and Defendant Fairway Village Condominiums, Inc. ("Fairway"). Fairway is a condominium association that governs a condominium complex damaged during Hurricane Ida on August 29, 2021. Industry Icon alleges that it entered into a contract with Fairway in October 2021 wherein it agreed to provide

cleaning and water remediation services for condominiums damaged by flooding or water intrusion as a result of the storm.[1]

Around the time of the alleged agreement, Fairway paid Industry Icon $25,000.00.[2] Fairway also executed a "Direct Payment Authorization" that authorized Fairway's insurer to directly pay Industry Icon insurance proceeds for "any services rendered or to be rendered" by Industry Icon that were covered by Fairway's insurance policy.[3] The Direct Payment Authorization also states that Fairway agreed to be responsible for any of Industry Icon's services that were not covered by its insurer.[4] The Direct Payment Authorization was the only document executed in relation to this dispute.

Industry Icon further asserts that Fairway's insurer ultimately denied coverage for its services based on the fact that Industry Icon "was not authorized and not licensed to remediate mold damage" in Louisiana.[5] Industry Icon alleges that Fairway's insurer filed a complaint with the Louisiana State Licensing Board, but the Board declined to bring charges after conducting an investigation.[6] Despite the complaint and the insurer's non-payment, Industry Icon completed its work on the complex. Industry Icon turned to Fairway to collect the balance for the services it had rendered, and later brought this suit to recover the remaining $782,326.84 of the $807,326.84 invoiced.

---

[1] Doc. 6 at 2.
[2] Doc. 6 at 3; *see* Doc. 50-5.
[3] Doc. 47-3.
[4] *Id.*
[5] Doc. 6 at 3.
[6] *Id.* at 4; *see* Doc. 50-3.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[7] A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[8]

In determining whether the movant is entitled to summary judgment, the Court views facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor.[9] "If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial."[10] Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case."[11] "In response to a properly supported motion for summary judgment, the non-movant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim, and such evidence must be sufficient to sustain a finding in favor of the non-movant on all issues as to which the non-movant would bear the burden of proof at trial."[12] "We do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the

---

[7] Sherman v. Hallbauer, 455 F.2d 1236, 1241 (5th Cir. 1972).
[8] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).
[9] Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 532 (5th Cir. 1997).
[10] Engstrom v. First Nat'l Bank of Eagle Lake, 47 F.3d 1459, 1462 (5th Cir. 1995).
[11] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[12] John v. Deep E. Tex. Reg. Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004) (internal citations omitted).

necessary facts."[13] Additionally, "[t]he mere argued existence of a factual dispute will not defeat an otherwise properly supported motion."[14]

**LAW AND ANALYSIS**

Fairway asks this Court to grant summary judgment on Industry Icon's breach of contract claim. Fairway contends that Industry Icon's claim fails because no written agreement that contains the essential terms for a valid services contract was perfected between the parties and any purported contract is an absolute nullity. Industry Icon opposes, arguing that the parties entered into a valid and enforceable contract.

A claim for breach of contract requires "(1) the obligor's undertaking an obligation to perform, (2) the obligor failed to perform the obligation (the breach), and (3) the failure to perform resulted in damages to the obligee."[15] "Put differently, the elements of a breach of contract are the existence of an agreement, a breach of that agreement, and damages resulting from that breach."[16] Here, the parties dispute whether a valid contract ever existed.

## I.    Agreement to Essential Terms

Fairway asserts that the only written document executed between the parties, the Direct Payment Authorization, lacks essential terms in that it fails to identify the price of Industry Icon's services or define the scope of work. According to Fairway, because Direct Payment Authorization "is what Industry Icon's entire breach of contract claim rests upon," and "no document contains those essential terms," Industry Icon cannot establish the existence

---

[13] Badon v. R J R Nabisco, Inc., 224 F.3d 382, 394 (5th Cir. 2000) (quoting Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)).

[14] Boudreaux v. Banctec, Inc., 366 F. Supp. 2d 425, 430 (E.D. La. 2005).

[15] Favrot v. Favrot, 68 So. 3d 1099, 1108–09 (La. Ct. App. 4 Cir. 2011) (citing 1436 Jackson Joint Venture v. World Constr. Co., Inc., 499 So. 2d 426, 427 (La. Ct. App. 4 Cir. 1986)).

[16] CCAPS, LLC v. HD and Assocs., LLC, No. 21-2195, 2023 WL 1965087, at *4 (E.D. La. Feb. 13, 2023).

4

of a contract obligating Fairway to pay for Industry Icon's services. Plaintiff admits that the Direct Payment Authorization is the only written document between the parties, but counters that oral and tacit agreements form the basis of its breach of contract claim rather than the Direct Payment Authorization.

To be sure, Fairway is correct that "[t]he Direct Payment Authorization is a payment authorization, not a services contract," and thus the document does not detail the entirety of the obligations Industry Icon alleges were breached.[17] Fairway, however, makes no argument as to why a written agreement would be required under these circumstances, and the record evidence it submits demonstrates a genuine issue of fact as to whether a valid agreement between the parties exists.[18] Specifically, Steven Louque, Fairway's president at the time the alleged contract was executed, stated in his deposition that the parties "did go into [a] contractual agreement to have [Industry Icon] do the work" that forms the basis of Industry Icon's claims.[19] The fact that the Direct Payment Authorization is insufficient and that there are no other written agreements does not foreclose Plaintiff's breach of contract claim where Louisiana law permits oral and implied contracts.[20]

---

[17] Doc. 51 at 3; *see* Doc. 47-4 at 71–72 ("[The Direct Payment Authorization] says that we hired – we were going to hire Industry Icon, and by doing so, we would be not responsible for the payment unless the insurance company didn't pay them. That's what this agreement was that – to protect them if the insurance don't completely pay, we got to come up and foot the bill for the rest. That's what this is for.").

[18] Fairway's Statement of Undisputed Material Facts merely asserts that "[n]o *written* contract exists between Industry Icon and Fairway." Doc. 47-2 at 2 (emphasis added).

[19] Doc. 47-4 at 34–35.

[20] "A contract is formed by the consent of the parties established through offer and acceptance. Unless the law prescribes a certain formality or the intended contract, offer and acceptance may be made orally, in writing, or by action or inaction that under the circumstances is clearly indicative of consent." LA. CIV. CODE art. 1927. The Court notes that Industry Icon's Complaint makes no mention of the Direct Payment Authorization and does not specify the type of contract that forms the basis of this suit.

Even assuming that Fairway's Motion intends to imply that there was no agreement, oral or implied, as to the scope of work or price, Louque's deposition testimony rebuts that implication. Louque states that Fairway "brought [Industry Icon] in to do mitigation and cleaning work with a public adjuster to be able to benefit [Fairway] as much as possible."[21] Based on Louque's deposition testimony, Fairway had a separate contract with Ron Adam, a public adjuster, to "provide a scope of work," and Fairway's insurance company would make payments based on that scope of work.[22] Therefore, the deposition testimony Defendant offers in support of its Motion reflects that there may have been some agreement as to the essential terms of a valid contract. Accordingly, Fairway has failed to meet its initial burden to show the absence of a genuine issue of material fact regarding the existence of agreement as to the purported contract's material terms.[23]

## II. Nullity

Turning to Fairway's nullity argument, Fairway avers that even if the parties formed an agreement, Industry Icon's failure to hold a Louisiana contractor's license renders the contract unenforceable and defeats its claim as a matter of law. "[O]nly a person who has obtained a contractor's license from

---

[21] Doc. 47-4 at 90. Louque qualifies this statement by clarifying that Fairway never received a written scope of work. *Id.*

[22] Doc. 47-4 at 82. In Louisiana, a "public adjuster" is "any person who, for any compensation, direct or indirect, engages in public adjusting," which is defined in pertinent part as "[i]nvestigating, appraising, or evaluating and reporting to an insured in relation to a first-party claim for which coverage is provided by an insurance contract that insures the property of the insured." LA. REV. STAT. § 22:1692(7)–(8)(a).

[23] *See* Isquith *ex rel.* Isquith v. Middle South Utils., Inc. 847 F.2d 186, 198–99 (5th Cir. 1988) ("[A]s *Celotex* recognizes, Rule 56 permits a movant to discharge [its] initial burden by 'pointing out to the district court' that the record contains no evidence of an essential element of the nonmovant's case. Just because a movant makes that claim, however, does not mean that the claim is true. And if it is not—if the movant wrongly characterized the information in the record—the movant has not shown the absence of a genuine issue which would entitle it to summary judgment.") (internal citations omitted).

the State Licensing Board for Contractors may be engaged in the contracting vocation in the State of Louisiana."[24] Thus, "[u]nder Louisiana law, a contracting agreement entered into without the benefit of a contractor's license is null and void."[25] Industry Icon does not dispute that it held no Louisiana contractor's license but asserts that its water mitigation services do not fall into the class of services for which Louisiana law requires a license. The Court is ill equipped to reach the issue here. To determine whether Industry Icon required a contractor's license, the Court must determine whether Industry Icon "acted under the Agreement as a contractor."[26] For the purposes of this dispute, "contractor" is defined as:

> [A]ny person who undertakes to, attempts to, or submits a price or bid or offers to construct, supervise, superintend, oversee, direct, or in any manner assume charge of the construction, alteration, repair, improvement, movement, demolition, putting up, tearing down, or furnishing labor, or furnishing labor together with material or equipment, or installing the same for any building, highway, road, railroad, sewer, grading, excavation, pipeline, public utility structure, project development, housing, or housing development, improvement, or any other construction undertaking for which the entire cost is fifty thousand dollars or more when the property is to be used for commercial purposes.[27]

---

[24] Hagberg v. John Bailey Contractor, 435 So. 2d 580, 584 (La. Ct. App. 3 Cir. 1983); LA. REV. STAT. § 37:2163(A)(1) (("It shall be unlawful for any person to engage or to continue in this state in the business of contracting, or to act as a contractor as defined in this Chapter, unless he holds an active license as a contractor in accordance with the provisions of this Chapter."). The purpose of these provisions is to protect the State's citizens by ensuring that those acting as contractors are qualified to do so. TradeWinds Env't Restoration, Inc. v. Stewart, No. 06-3299, 2008 WL 236891, at *3 (E.D. La. Jan. 28, 2008), *aff'd sub nom.* Trade-Winds Env't Restoration, Inc. v. Stewart Dev. Liab. Co., 409 F. App'x 805 (5th Cir. 2011).

[25] *Tradewinds Env't Restoration, Inc.*, 2007 WL 1191896, at *3. Additionally, a contract that is absolutely null may not be confirmed or otherwise ratified. LA. CIVIL CODE art. 2030.

[26] *CCAPS*, 2023 WL 1965087, at *10.

[27] LA. REV. STAT. § 37:2150.1(4)(a) (2019).

The Court must, therefore, analyze whether the services contemplated by the parties' alleged agreement fell into the categories of services defined above.

Fairway's Statement of Undisputed Material Facts does not address the scope of work contemplated by any alleged agreement or the nature of services rendered.[28] Likewise, in its Motion, Fairway does not assert that there is no genuine issue of material fact as to the scope of work. However, Fairway's Motion does allege that Industry Icon's demand for payment encompasses "work to fully gut nearly all of the units, removing drywall, cabinetry, ceramic tile, bathroom fixtures, etc."[29] While this allegation may speak to the work Industry Icon ultimately performed, the Court cannot ascertain whether that work was completed pursuant to the alleged agreement. Further, Fairway's Motion and Louque's deposition testimony indicates that, assuming there was any agreement as to the scope of work, Industry Icon may have exceeded it by completing work outside of the parties' agreement.[30] As discussed above, a genuine issue of material fact exists regarding whether the parties reached an agreement on the scope of work Industry Icon was required to perform.[31] Where, as here, the Court cannot ascertain the scope of the parties' intended agreement based on the record, the Court cannot analyze whether the

---

[28] Doc. 47-2.

[29] Doc. 47-1 at 3.

[30] *See* Doc. 47-4 at 44–45 ("Q. Did you find that the mitigation work they did in your units benefitted your units? A. I would have to answer no. Because one of my units needed some stuff gutted out. And, yes. But the unit number 2 had a bad fire place, and it caused a lot of damage on the second floor. And they gutted the entire unit because of that. I thought that was overkill. And then in unit 28, I had – only damage in 28 looked like from roof leak. But I did – nothing caved in in my unit. But they completely gutted it out, tore the whole thing out based on some readings they had taken. . . . The company came in and tore out a bunch of stuff that didn't need to be torn out. Could have been – could have been not gutted out as harshly as it was done, because some of the damage that was visible needed to be remediated. . . . I think they took advantage of us in that first respect.").

[31] The fact that Industry Icon did not hold a Louisiana contractor's license logically has no bearing on the validity of an agreement where the parties reached no agreement at all.

contracted services fell within the ambit of those requiring a contractor's license under Louisiana law.[32]

**CONCLUSION**

For the foregoing reasons, the Motion is **DENIED**.

New Orleans, Louisiana this 8th day of July, 2026.

_____
**JANE TRICHE MILAZZO**
**UNITED STATES DISTRICT JUDGE**

---

[32] *See* InPwr Inc. v. Olson Restoration LLC, No. 2:21-CV-00821, 2022 WL 16845153, at *5 (W.D. La. Nov. 9, 2022) ("Accordingly, the Court finds that a genuine issue of material fact as to the scope of the work performed exists. Specifically, a genuine issue as to whether the work performed by ESP and ServPro required a valid contractor's license exists."). While the Court recognizes this issue has been resolved under other circumstances, the instant case is distinguishable based on the oral or implied nature of the alleged contract and the fact that the Court is unable to determine the scope of work based on the record. *See CCAPS*, 2023 WL 1965087 at *6–10 (applying the statutory definition of "contractor" to the scope of work as alleged by the plaintiff at the motion to dismiss stage); *see also* 24/7 Restoration Specialists, LLC v. Young, No. 22-1948, *1–4, (E.D. La. June 5, 2023) (applying the statutory definition of "contractor" on summary judgment where there was a written contract between the parties and no dispute as to the scope of work as contemplated by the parties' alleged agreement).